## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01274-GPG

GREGORY D. COSBY, aka Gregory D. Crosby,

      Applicant,

v.

A. CIOLLI, Warden,
M. BANVELOS, DHO Officer,
J. POTTER, Correctional Officer,
K. MANDABON MARTINEZ, and
D. MCMICHEAL,

      Respondents.

---

## ORDER DENYING AMENDED APPLICATION FOR WRIT OF HABEAS CORPUS

---

      This matter is before the Court on the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Amended Application") (ECF No. 6) filed *pro se* by Applicant Gregory D. Cosby on June 2, 2023. On August 4, 2023, Respondents were ordered to show cause why the Amended Application should not be granted. (ECF No. 16). On September 5, 2023, Respondents filed a Response to the Order to Show Cause (ECF No. 27). On September 14, 2023, Mr. Cosby filed a Reply to the Respondents' Response to Order to Show Cause (ECF No. 28). On October 2, 2023, Respondents filed a Motion to File a Surreply and attached a proposed Surreply to their Motion. (ECF Nos. 29 & 29-1). Mr. Cosby filed a Response to the Surreply on October 23, 2023. (ECF No. 32) The Court will grant Respondents' Motion to File a Surreply. After reviewing the pertinent portions of the record in this case, the Court FINDS and CONCLUDES that the Amended Application should be denied.

I.      **Background**

Mr. Cosby is a prisoner in the custody of the Federal Bureau of Prisons ("BOP"),

currently incarcerated at Florence ADMAX in Florence, Colorado. (ECF No. 6).  On October 20,

2022, a BOP officer prepared an incident report charging Mr. Cosby with the disciplinary

offense of threatening bodily harm to BOP staff. (*See* ECF No. 27-1 at 83).  The incident report

was delivered to Mr. Cosby on the same day. (*See id.* at 85).  The Unit Discipline Committee

("UDC") referred the matter to a Discipline Hearing Officer ("DHO") on October 23, 2022. (*See*

*id.* at 84).  Mr. Cosby was notified of the DHO hearing and was informed of his rights for the

hearing. (*See id.* at 89-90).

Although Mr. Cosby initially requested a staff representative and witnesses, he later

waived his request for both. (*See id.* at 7 & 92).  The DHO hearing was held on October 28,

2022. (*See id.* at 94).  Mr. Cosby was convicted of threatening bodily harm to BOP staff. (*See id.*

at 95).  The DHO provided the following description of the specific evidence on which he relied:

> The DHO advised you of your rights before the Discipline Hearing Officer and
> you stated you understood those rights.  You confirmed you did not request a staff
> representative or witnesses.
>
> . . .
>
> The DHO bases [the guilty] finding on the incident report writer[']s statement in
> Section 11 which states, "On 10/20/2022 at 10:15A.M, while I and Officer Potter
> were passing out trays Inmate CROSBY, GREGORY Reg #05825-045 was in the
> Law Library and kicked the door.  Officer Potter went to let him out and informed
> him to get his trays.  He told her that he would get them in a few minutes and sat
> down by the computer closest to the showers.  He then approached us to get his
> tray, Inmate Crosby was told by Officer Potter to button up his shirt because he
> did not have it buttoned up.  He pretended like he did and went to grab his tray.  I
> then told him again to button up his shirt and he did and grabbed his tray.  He then
> walked away and sat down by the computers.  He was mumbling something under
> his breath that neither Officer Potter nor I could understand.  We went begin [sic]
> feeding the bottom tier their trays when Officer Potter noticed that Inmate Crosby

2

was standing at the cage where Officer McMichael was at. Crosby started talking to Officer McMichael in an aggressive manner and she told him to get away from the cage to which inmate Crosby refused to listen. Officer Potter then approached the inmate and told him to back away from the bubble and leave Officer McMichael alone. He then started talking back to Officer Potter. Officer Potter then directed Crosby to go back to his cell. Crosby then got more aggressive towards Officer Potter saying, ["]If I don't go in bitch? What are you going to do?" Crosby then started stepping towards Officer Potter. Officer Potter then gave him another verbal command to go to his cell and at this point he started saying, ["]I[']ll beat you up bitch." Officer Potter then demanded that he go to his cell. Crosby said, ["]If you spray me, I[']m going to smash you bitch!" "I[']m going to knock you out bitch! You don't know who you are dealing with." Crosby proceeded to walk up the stairs while saying, "I will kill you bitch! What are you going to do about it?" Officer Potter opened up his cell and he walked in and Officer Potter quickly secured his cell.

The DHO noted a memorandum from staff corroborating section 11 of the incident report.

The DHO considered your Inmate Chronological Disciplinary History which confirms you have a history of misconduct which includes an infraction for code 203 -- THREATENING BODILY HARM.

The DHO noted during the investigative [sic] you admitted guilt.

The DHO noted during the UDC, you gave them a written statement saying you were being harassed.

The DHO noted during the DHO hearing you stated, ["]She was following me around harassing me. [W]atch the video." The video was reviewed and showed them engaged in conversation numerous times.

Based on the greater weight of evidence which includes the information outlined above, the staff member[']s statement in section 11 and the fact that you did admit guilt to the investigator, the DHO finds you did commit the prohibited act of code 203 -- THREATENING BODILY HARM.

(*See id*. at 95-96). Mr. Cosby was sanctioned with a loss of 27 days of good conduct time, a loss of email privileges for 90 days, and ordered to be placed in disciplinary segregation for 15 days.

(*See id.* at 96). The DHO explained the reasons for the sanctions as follows:

3

The action/behavior on the part of any inmate to make any sort of threat towards any person poses a serious threat to the health, safety and welfare of not only the person(s) involved, but that of all other inmates and staff.  In the past, evidence has clearly shown threats to be carried out by inmates, or other inmates who may have witnessed the threat being made.  This type of action/behavior cannot and will not be tolerated from any inmate.  The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.

The sanction of disallowance of Good Conduct Time (Dis GCT) was imposed to emphasize the seriousness of the offense and to enforce the standard that inmates be held accountable for their actions as well as to comply with mandatory sanctioning guidelines for inmates sentenced under the Prison Litigation Reform Act (PLRA).

(*Id.*).  A copy of the DHO report was delivered to Mr. Cosby on November 4, 2022. (*See id.* at 97).

Mr. Cosby alleges in the Amended Application that he was denied due process because the DHO failed to consider video evidence and failed to allow the Applicant to review it. (ECF No. 6 at 13).  Additionally, Mr. Cosby alleges that the DHO coerced Mr. Cosby into waiving staff representation. (*Id.*).  Further, Mr. Cosby states that the DHO only considered the false information provided in documents and memorandums by the BOP officers involved in the incident. (*Id.* at 9 & 13).  He alleges that the evidence did not justify a guilty decision. (*Id.* at 9). For relief, he requests that the Incident Report be expunged and that his 27 days of lost good-conduct time be restored. (*Id.* at 12).

Respondents argue that Mr. Cosby's Amended Application should be denied because he received the required due process during the disciplinary proceeding. (ECF No. 27 at 2).  In his Reply, Mr. Cosby argues that at no time did he threaten to kill an officer. (ECF No 28).  He also states that the officers involved in the incident were making sexually suggestive comments towards him and had previously sexually harassed him. (*Id.*).  He states that he told the DHO

4

about the sexual harassment. (*Id.*). He also asserts that the DHO is a liar. (*Id.*). Finally, in his Declaration, attached to his Reply, Mr. Cosby asserts that he only waived staff representation after the DHO told Mr. Cosby he would be able to review the video surveillance. (ECF No. 28-2 at 4-5). In the Surreply, Respondents state that Mr. Cosby asserts a new argument in his Reply that BOP staff were truthful about Applicant threatening bodily harm because several BOP officers sexually harassed Mr. Cosby during the incident. (ECF No. 29-1 at 1). Respondents argue that this new assertion by Mr. Cosby does not overcome evidence in the record that Applicant was guilty of the disciplinary violation. (*Id.*). In his Response to the Surreply, Mr. Cosby states that he did include these allegations of sexual harassment in his Amended Application. (ECF No. 32).

## II.    Standards of Review

The Court must construe Mr. Cosby's filings liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief is warranted only if Mr. Cosby "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

In the context of prison disciplinary proceedings, "[i]t is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (internal quotation marks omitted); *see also Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (citing *Mitchell* in the context of a federal prisoner challenging a prison disciplinary conviction.  However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

> Where a prison disciplinary hearing may result in the loss of good time credits, . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). Furthermore, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." *Hill*, 472 U.S. at 454 (internal citation and quotation marks omitted).

## III.    Discussion

Mr. Cosby's Amended Application is not a model of clarity.  Liberally construing the Amended Application, Mr. Cosby appears to contend: (1) he did not receive due process as required by BOP regulations; (2) he was coerced into waiving staff representation; (3) the DHO did not consider video surveillance and Mr. Cosby was not allowed to review the video

6

surveillance; (4) there was not sufficient evidence to support a guilty decision; and (5) BOP officers sexually harassed Mr. Cosby during the incident.

### A. Failure to Comply with BOP Regulations

According to Mr. Cosby, he did not receive due process as required by BOP Program Statement 5270.09, Inmate Discipline Program. (ECF No. 6 at 9). However, Mr. Cosby is not entitled to relief in this action based solely on the alleged failure to comply with BOP regulations applicable to inmate disciplinary proceedings. In short, "a failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993). Therefore, to the extent Mr. Cosby asserts any of his habeas claims solely on an alleged failure to comply with BOP policies and regulations, such claims lack merit.

### B. Coerced Into Waiving Staff Representative

Next, Mr. Cosby argues that the DHO "coerced" him into waiving his right to have a staff representative. (*See* ECF No. 6 at 13). Specifically, in his Declaration attached to his Reply, he argues that he only waived his right to staff representation after the DHO told him he would be able to review the video surveillance but then he was never allowed to view the video. (ECF No. 28-2 at 4-5).

Beyond Plaintiff's allegation contained in his Declaration, there is no indication that his waiver of staff representation was premised on an unfulfilled promise by the DHO. Mr. Cosby signed his initials waiving staff representation, and the DHO noted in his report that Mr. Cosby confirmed, prior to the hearing, that he did not request a staff representative. (*See* ECF No. 27-1 at 92 & 95).

Furthermore, the specific due process requirements of *Wolff* do not provide that a prisoner is entitled to staff representation during a disciplinary hearing. *See Jordan v. Wiley*, 411 F. App'x 201, 209 (10th Cir. 2011) (holding prisoner had no viable due process claim about the quality of assistance received from a staff representative during a disciplinary hearing because an inmate only has a due process right to receive assistance from a staff representative where the inmate is illiterate or the issue is so complex that it is unlikely that the inmate will be able to collect and present the necessary evidence). Thus, Mr. Cosby's claim regarding being coerced into waiving staff representation does not entitle him to habeas relief.

### C. Video Surveillance Was Not Considered by DHO and Mr. Cosby Was Not Allowed to View It

As to Mr. Cosby's argument that he was not allowed to view the video surveillance, such allegation does not amount to a denial of due process. Mr. Cosby does not allege that because he was unable to view the video surveillance he was unable to marshal a defense. In fact, Mr. Cosby waived his right to call any witnesses in the disciplinary hearing. (*See* ECF No. 27-1 at 92 & 95). Further, there is no due process right requiring an inmate to be able to view prison video surveillance recordings prior to or during a disciplinary proceeding.

Additionally, Mr. Cosby's allegation that the DHO failed to consider video surveillance is contradicted by the DHO Report, which states that "[t]he video was reviewed and showed them engaged in conversation numerous times." (*See* ECF No. 27-1 at 96).

As a result, there is no merit to Mr. Cosby's claim regarding the video surveillance.

### D. Sufficiency of Evidence

Finally, Mr. Cosby argues that the evidence presented did not justify a finding of guilt. The due process requirements for a prison disciplinary hearing require that a DHO's findings are

8

supported by "some evidence" in the record. *See Hill*, 472 U.S. at 454. "Ascertaining whether [the 'some evidence'] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56. "A disciplinary board's decision can be upheld by a reviewing court 'even if the evidence supporting the decision is meager.'" *Howard v. U.S. Bureau of Prisons,* 487 F.3d 808, 812 (10th Cir. 2007) (quoting *Mitchell [v. Maynard],* 80 F.3d [1443,] 1445 [(10th Cir. 1996)]).

Here, as specifically stated in the DHO Report, the DHO relied on evidence of the incident report writer's statement, a memorandum from staff corroborating the statement in the incident report, Mr. Cosby's history of misconduct,  Mr. Cosby's admission of guilty during the investigation, and a review of the video which showed the parties engaged in conversation numerous times. (*See* ECF No. 27-1 at 95-96).  This satisfies the due process requirement that the DHO's findings were supported by some evidence in the record.  Finally, Mr. Cosby's conclusory argument that the DHO only considered falsified documents from BOP staff does not demonstrate he is entitled to any habeas relief.

### E.  Allegations of Sexual Harassment by Officers

In the Surreply, the Respondents argue that Mr. Cosby argues for the first time, in his Reply, that the officers involved in the incident were sexually harassing him and that is why they lied about the incident.  Mr. Cosby responds that he did include the allegations regarding sexual harassment in his Amended Application. (ECF No. 32).  The Court agrees with Mr. Cosby that allegations that the officers in question were sexually harassing him were included in his

Amended Application. (*See* ECF No. 6 at 3).  However, such allegations do not change the outcome of his habeas action.  Although the DHO did not include any mention of *sexual* harassment, he did note in his Report that Mr. Cosby provided a written statement during the UDC that he was being harassed and that Mr. Cosby said, during the DHO hearing, that one of the officers was following him around and harassing him. (ECF No. 27-1 at 96).  Despite these allegations of harassment, the DHO concluded that the greater weight of evidence justified a finding that Mr. Cosby was guilty of the disciplinary violation. (*Id.*).  Even if Mr. Cosby's allegations of harassment were actually allegations of *sexual* harassment, such assertions do not change the conclusion that Mr. Cosby was provided due process during the disciplinary proceedings.

## IV.  Conclusion

In conclusion, Mr. Cosby was provided with advance written notice of the disciplinary charges, he was given an opportunity to call witnesses and present documentary evidence, the DHO provided a written statement of the evidence relied on and the reasons for the disciplinary action, and the determination of guilt was based on some evidence.  Thus, for the reasons discussed in this order, Mr. Cosby is not entitled to habeas relief and the Amended Application will be denied.  Accordingly, it is

ORDERED that Respondents' Motion for Leave to File a Surreply (ECF No. 29) is GRANTED.  It is

FURTHER ORDERED that the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 6), filed by Applicant Gregory D. Cosby on June 2, 2023, is DENIED and this case is dismissed.  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal he must also pay the full appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED February 5, 2024

BY THE COURT:

GORDON P. GALLAGHER
United States District Judge